May it please the court, Nene Sam for petitioner Alphonse Bassene. I will actually reserve three minutes for rebuttal if that's okay with the court. This case, I think, is one filled with conundrum because the IJ did find that the fact that Mr. Bassene filed the N-400 instead of the 589 was a good enough excuse to excuse the one-year bar because it fitted in the extraordinary circumstances that will waive the one-year bar and then he turns around and completely ignores everything that the petitioner put in his application to solely rely on an application titled N-400 which is for citizenship purposes and he felt that it was and the reason why I need to speak about the IJ decision is because the BIA basically just based its decision on the IJ's decision so his oral argument and all of his determination will be then relevant for this case. And so ignoring everything that is in the case, the IJ decided to solely rely on the N-400 and he goes forward to say that, well, this person was arrested and didn't tell us about it. He was a member of the MFDC. He didn't tell us about it, but there is nothing really odd about that. Mr. Bassene has stated all along that he was forced to be a member of the MFDC. Somebody who is forced to be a member of something is not going to list that membership because they don't consider themselves to be a member of that. And when it comes to the question on page, on the second page of Pad 7, the 15 question, the one asking about arrest, it asks about whether the person has been arrested, cited, charged, etc. based on a breaching and a violation of any law. Obviously, that question will still be answered no by my client simply because he was arrested, but it was not based on having broken any kind of law in his mind, but based on something completely political. So first of all, relying on the N-400 was a clear error of law and should not have happened both at the IJ level and at the BIA level. Ms. Sam, may I interrupt? This is Judge Fletcher. I read the two forms that were submitted by your client, and of course I've read the IJ's decision. The IJ was troubled by the fact that in the initial application that was a naturalization form, Mr. Bassene attached at the end a document in which he said, Well, I was expecting the following question. Then he gives a very precise rendition of the appropriate question. Have you at any time anywhere ever experienced or attended prosecution of any person because of race, religion, national or political opinion? Then he proceeds to answer that question, which he's asked himself, which is the right question, but in answering the question, he doesn't talk about the period of his arrest and imprisonment and being abused during that period, and the IJ holds that against him, saying, Well, if you were going to answer that question, I would expect that you would have given us that information at that time. What's your response to that? Well, if you notice, Your Honor, it asks, Have you at any time anywhere participated in the persecution of any person? No, no, no. Excuse me, Ms. Sam. The question he asks himself, Have you experienced or attended? Now, attended may mean I'm not sure, but it says, Have you experienced persecution? So the question he asks is, Did you experience persecution? And he leaves out the fact that he was arrested and held for that period. Correct. Now, when he explained in the transcript, he does talk about saying, He says, I don't know why, but it's more a question of I don't know how, because he explains in the transcript the fact that English, he didn't understand English at the time, and the whole one-pager is a rambling of things that does not really make a whole lot of sense, and I'm not sure if it was a cut-and-paste work or what it was, but he talks about the extra things rather than dealing with the application itself. And I think the fact that Mr. Bassan did not understand English and did not understand how this whole process happened was one of the biggest problems with his case to begin with, and that has been the issue that he talked about. The IJ felt that he did not answer the question, but he actually answered it by saying that he did not know how to do this because he was not yet comfortable with the English language. He had just come in. He didn't know how the process worked, and he didn't even know because the whole time he's talking about things. He's talking about things in general rather than talking about specific things, even though he did talk about the fact that he was a victim of persecution, and that is the reason why he filed the application. But the process of actually explaining what happened didn't happen in the whole N-400, and it's because he didn't know how to do it. And when he went ahead and tried to find help, he was not able to find help. But the IJ cannot on one hand excuse the fact that he didn't know any better and then turn around and say, well, you didn't know any better, but I'm going to hold you responsible for not knowing any better. Okay, okay. Did you find that Mr. Bassin had a problem with the English language? This is Judge Preggerson. Did you hear me? I'm hearing you, Your Honor. Yeah, I just, did you find that he had, your client had, did he have any difficulty with the English language? At the time, yes. He had filed his application when he was still not comfortable with the English language, and that was the issue, not only not being comfortable with the English language, but not knowing about Asylum laws, because obviously if he knew about Asylum laws, he would not have filed a document titled very clearly for citizenship purposes rather than Asylum purposes. And when he filed the proper Asylum claim, he did answer the questions. And, in fact, the government even concedes the fact that Mr. Bassin was very credible. In the transcript, it comes very clearly that the government is saying, well, Your Honor, we will do what you want us to do, but we feel that this person is very credible, whether it was during the testimony, whether it was during his, throughout the time of the testimony, and with his application, and with the evidence, because there is a slew of documents that the ICA never talks about. There is a State Department. There is an Amnesty International report. There is another Amnesty International report. There are documents after documents. There is a 98 African News, another 98 article about the killing by the army, another article in 2001 about the renewed fighting, a 94 Amnesty, a 96 Amnesty, a 97 Amnesty, a 95 Amnesty, a 98 article about the displacement of both human beings and wildlife, several Washington Post articles, and other articles that the ICA completely ignores. He ignores the fact that, and this case, by the way, happened in August of 2006, and because the application was updated, this was a real idea, I think, and the ICA was completely wrong in solely basing his determination and focusing on the N-400 because he feels that that's the case, that it's the heart of the claim, and with the real idea, both the BIA and the Ninth Circuit have stayed away from the heart of the claim, and it is supposed to be a totality of the circumstances, and here he ignores the fact that, I mean, on the documents, we have documents showing that two of Mr. Cousin, I mean, Bassam's cousins have disappeared back in January of 1994, and he ignores that. He ignores all the evidence. He ignores the fact that this person is extremely credible to focus on a document that he already feels was explained away, and so it was clear error for him to do that, and it was clear error for the BIA to go ahead and rely on that, and in this case, unlike Mr. Bassam's former lawyer, I think that it would be appropriate for this court to review this thing de nouveau because there was actually a clear mistake of law on relying on the 400 and because of the fact that this was the real idea, and they did not deal with the totality of circumstances at all and just focused on something that he feels was the case, what happened to everything that had happened to Mr. Bassam. It was complicated. I have another question for you. Do you have other Sinhalese folks in your area that you also represent? Correct, Your Honor. What? Yes. So are you from Senegal by any chance? Yes, I'm from Senegal, Your Honor, and actually my mother is from this region, so I have firsthand knowledge about how difficult the whole situation has been in the southern part of Senegal. Are you from Senegal? That was the question. Yes or no? Yes, Your Honor. And so you do a lot of immigration work? You specialize in that field? Yes, Your Honor, I specialize in immigration cases. I see. Were you born in Senegal? Yes, Your Honor, I was born in Senegal. And do you speak French? Yes, Your Honor. Were you educated in French? Yes, Your Honor. Okay, thank you. Do you want to say something to us in French? Judge Fletcher speaks French well. Ah, okay. I'm not sure what you want me to say, but I think this case should be decided in a way that my client can have his papers, because he has a case that must be decided favorably for him. You speak French very well, with a very Senegalese accent. Very well done. Thank you. Okay. I took French at UCLA. I got B's. That was a good grade. Now they have great inflation. And the teacher was a Russian woman. As you know, the Russian aristocracy spoke French. Oh, yes, that's true, yes. Yes, I do remember that. Merci beaucoup. No, de rien, vous. Merci. Au revoir. You speak French? Well, you know, Judge Trott spoke French fluently. All right. May it please the Court, my name is Andrew O'Malley. I represent the Attorney General of the United States. This court should deny the petition for review because substantial evidence in the record supports the agency's conclusion that petitioner was not credible. Specifically, petitioner omitted any mention in his initial filing that he was detained, beaten, and fined for his perceived membership in the MFDC. Now, he testified that he believed that his naturalization application was the vehicle by which he was to explain to the United States government why he feared returning to Senegal. Yes, here's my problem with that argument. I mean, I understood what A.J. said, and you could hear in my question what's the explanation. He did ask a question which, in general terms, is precisely the question to be asked for asylum. On the other hand, if you look at the asylum form, there is a series of questions, and they're very precise, asking for detail that was not asked for at all. So he's making up the generic question, and I have great difficulty holding it against him that he could not anticipate all of the precise questions that were actually on the real form that he finally fills out. Yes, Your Honor. And the I.J. doesn't seem to take that into account. Well, I believe he does, Your Honor. In the Immigration Judges' Petition, he says, I could excuse if you omitted the fact that your aunt's village was burned. I could excuse the fact that you omitted that your cousins were feared dead, but this is the entire basis of your claim. This is the most serious thing that happened to you in Senegal. This is what you're basing your fear on, and there's absolutely no indication in what you believe to be your vehicle for explaining why you fear returning. But he was not asked specific questions about that, and here he is so ignorant of American processes that he thinks that a naturalization form is the form to do it. And so how is he supposed to know that detailed explanation as to what happened to him is of this degree of importance, instead of saying, you know, they discriminate a lot in Senegal. It's very difficult for people of my ethnicity within Senegal. I mean, he answers the question. How is he to know without seeing the actual form that's the proper form, the detail that he's supposed to respond with? Yes, Your Honor. Two points of response, the first being that the board specifically noted that there was a question directly on that naturalization application that specifically asked him about any other affiliation with any organization, and he didn't list the MFDC at all there. That's a very specific question. He had the presence and the education and the knowledge of the language to list that he was a member of the YMCA, but did not list affiliation with the MFDC. Well, was he in fact a member? I understand that his family had had this money extorted from them  Does that make him a member? His testimony was that, well, his testimony was that he initially supported the organization, that until he realized that there was a violent faction and that there was fear that his cousins were feared dead, he supported their causes and he supported their goals. He was a card-carrying member. Whether or not that was forced on him So he was a card-carrying person, I'm not sure that makes him a member. That is something that should have been disclosed on the N-400 with respect to affiliation. The second point is that he had the opportunity to explain this to the immigration judge. The immigration judge very specifically asked him, why didn't you include this information in this form? You said, this is why I'm here going back to Senegal. Why was this not included? And he simply said, I don't know. Now petitioner's counsel suggests that he suggested that he didn't speak English language very well. And he did earlier in his testimony. But that's not why he said he omitted that information. He said, I don't know. He didn't say, I didn't understand the question. I didn't speak English well enough to express that. I didn't know that I had to provide that amount of detail. And directly after the immigration judge asked that question, petitioner's counsel was afforded the opportunity for a redirect and asked no questions there, your honor. Now again, this simply isn't a case of failing to check the box. This is a case of omitting the very heart of his claim. Now it's notable, and the IJ noted this. But let me ask you this. He came here in 97 on a J-1 cultural exchange visa. That's right, huh? That's correct, your honor. Okay. And he said he feared returning to Senegal because the military, the Senegalese military had arrested him, believing that he was part of this MFDC and told him if he were arrested again, that would be the end of it. That's correct, your honor. Okay. And he planned to become a U.S. citizen when his visa expired. And he should have then applied for asylum, but he applied for citizenship in 99 because he said American college student in Denver told him that was how he should legalize his status. That's part of his story, right? That's correct, your honor. And then at his 2001 appeal hearing on denial of his citizenship application, the immigration and naturalization service officer told him that he'd filed a wrong application and told him to submit an asylum application, which he did. And then four years go by and they're having a removal hearing and the IJ applied the exceptional circumstances rule to help him out. And so the IJ found that Bassini timely filed his citizenship application and a quasi-asylum application within one year of the expiration of his J.I. visa. So the IJ was giving him a good break. That's correct, your honor. And then, so then the IJ makes an adverse credibility finding because the applicant here didn't set forth information that should have been in an asylum claim in his citizenship application, even though the IJ said that the two applications would be treated as one and that the citizenship application made his filing timely. This is going to make sense to me that the IJ considered the citizenship application as needing to set forth the information that was somehow in the asylum application. It's very confusing, this case. And, you know, it's kind of, I mean, here everybody's nice to him and tells him what to do, the freedom is one, and we'll consider, put these together. And everybody is, everything seems to be going his way. And then, boom, the adverse credibility finding. It's just kind of inexplicable to me. Your honor, I think it's It's like you lead them down a primrose path. I think there Then you push them off. There are two separate determinations there. There's the determination as to whether or not this constituted sufficient filing to excuse the one-year bar, and then there's whether or not this was an inconsistent statement for purposes of credibility. And as the immigration judge says, you know, I can consider things that you said. You know, it's not an inconsistent statement. It's an incomplete statement. Incomplete or omission. And this is something that you filed with the United States government. Yeah, but isn't the IJ supposed to help people out? You know, well, you know, you left this out. What about that? I believe the immigration judge I mean, I wasn't there. And you didn't have a court reporter there. Your honor, the immigration judge goes through, during the testimony, says this isn't the case that I expected this morning, and the record wasn't really developed the way that I wish it was. And he goes through and he spends a long time asking questions to Petitioner about the evidence he submitted, why he omitted this information. Petitioner's counsel suggests that the immigration judge ignored documentary evidence, but specifically discusses in the testimony with Petitioner the Department of State report saying free and fair elections in the Opposition 41, discusses the Amnesty International report suggesting that violence had succeeded, that refugees were returning, and really did try and help this individual out in terms of developing the testimony. Now, it's notable as well that, and the immigration judge noted this, I'm sorry, I'm out of time. May I make one quick point here? That Petitioner filed this naturalization application in 1999, a year and a half goes by before he actually files an application for asylum. During that time, he contacts an immigration clinic and they tell him, you don't have a viable claim for asylum here, I'm sorry, we can't help you out. Well, now he goes and pro se files an application for asylum, in which he includes all this new information concerning his membership and the farm itself. What's your point? Your honor, it leads to the conclusion that he may have made this up to bolster his claim. It detracts from his credibility, your honor. I'm sorry, I should have been more clear. Well, in his citizenship application, well, there are two inconsistencies. In his citizenship application, he said he was not affiliated with the MFDC. And he was truthful in saying that he was not a member, because he joined that organization by force after six gunmen entered his home. And then he said that he didn't disclose his politically motivated arrest by the single-ease military. And he was trying to get in that, he was trying to get his citizenship. That's where he's had this in his citizenship application. Am I right on that? Your honor, his intent was to express his fear of returning. He thought this was the way to gain refugee status and asylum. And did he also say he didn't understand that asylum relief was available? He didn't understand that when he applied for citizenship? He did not understand how to do it. He thought this was the vehicle to stay in the United States. He did not understand how to do it, your honor. He thought this was the way to stay in the United States. And he did all this, he prepared all his applications pro se. That's correct, your honor. And we're supposed to read them charitably, right? That's correct, your honor. And the immigration judge did so, as I noted in his decision, said, look, I can excuse the minor omissions, but this is the heart of your claim. This is everything, the most significant thing that happened to you in Senegal. And it's nowhere found in the application. I understand why the I.J. said that. On the other hand, there he is pro se, so ignorant of the procedures that he doesn't even have the right form. I think it's unrealistic to expect him to know the detail of what he's being asked when he himself has to ask the question. I think it's unrealistic to hold him to a high standard that we would hold someone to if he filled out the right form and all the very specific questions had been asked. Your honor, that omission, again, that omission went unexplained. He didn't say, I didn't know that I had to provide that much detail. He didn't say, I didn't. I think it's implicit. I mean, I don't need an explanation. Well, this does go to the heart of the claim, your honor. This is the heart of the claim. If there are no further questions. Let me ask you this. These two applications were treated as one. And was he given an opportunity or was he told that he ought to supplement the asylum application? He was afforded the opportunity, yes, your honor. Was that all explained to him? Yes, your honor. In fact, the immigration judge provided. When he was represented by counsel in front of the immigration judge, the immigration judge afforded the opportunity to correct information. Who represented him before the immigration? Sorry, your honor, if I may take a quick look here. Ms. Ansel, A-N-C-E-L. Who? Her name is Ms. Ansel. If you could keep your voice up, that would help. I apologize, your honor. Ms. Ansel, I believe is her name, A-N-C-E-L. Well, but no matter how well he supplemented it, the better he supplements it and the more detail he puts in, the bigger hole he's digging himself if it's going to be held against the standard of what he initially filed in his application. I mean, it's just the right hand giveth, the left hand taketh away. You know, they're saying you're timely, so I'm going to consider this to be an amnesty application. But at the same time, the more detail you give, the more likely it is then under the immigration officer's rationale that it's going to be a finding of no credibility. Well, your honor, again, he had the opportunity to express and tried to express his reasons for wishing to remain in the United States in his naturalization application. That was inconsistent with what he stated two years down the line after being told his asylum claim was not. You know, you say inconsistent. I don't think you mean inconsistent. You're right, your honor. It's an omission. What was the word you just used? Omission. He omitted the omission. Omission, yeah. I also wanted to be clear, because I don't know if I understood Petitioner's counsel properly. This is a pre-real ID case. Pre-real ID. Yes, real ID. Yeah, that's correct. Thank you very much. Thank you very much. All right. Anything further from Minneapolis, Minnesota? Yes, your honor. In my rebuttal, the counsel for Ms. Sebastian asked, your honor, there's many issues that the court would like me to address that I would like to address them in an appropriate manner. Can I submit a brief on these issues? And the judge says, unfortunately, we would not have time for that. And then she keeps on asking him, and he's like, no, we really don't have time for that. I have too many cases. I can't deal with that. So what is it that he was afforded? I am not sure. This is a person who was not sure of, and as counsel just said, he did not know. Somebody who does not know what form to fill out, who does not know what he is doing, cannot then be held to be responsible for not knowing. It's just too much of a conundrum, especially when the IAEA went ahead and excused the one-year bar, which is not very easy to do, because it was an exceptional circumstance. It just does not make sense, and it was a very clear error on both the IAEA and the BIA to rely on that 400. And when the questions did not ask him to probe it, yes, no, yes, no, everywhere it's yes, no, and no. Mr. Baskin was not a member of the MSTC at any time, and he would not be listed in the application today or at the time when he did it in 1990. He is not considered he didn't consider himself a member of the MSTC. He was forced into joining. Anybody who is forced, and then people turn around and tell you, well, you're part of something that you're forced to do. It just does not make sense, and it does not fit the style of law of this country at all. And when the N-400 is read, the arrest that is being referenced is in reference to breaking the law. It has nothing to do with, which is actually an interesting wording. It does not have anything to do with persecution based on politically, on political consideration. And so even today, he would have to answer no to that question. Yeah, all right. Well, listen, thank you very much, and I appreciate the argument, and the matter will stand submitted.
judges: Piersol, Pregerson, Fletcher